

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-28-2006

# Wu v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1246

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Wu v. Atty Gen USA" (2006). *2006 Decisions.* Paper 1533.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1533

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO. 05-1246

_____

CHI RONG WU; DAO-YI  XU,
Petitioners

v.

*ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

*Pursuant to Rule 43(c), F.R.A.P.
Court's Order of 3/22/05

_____

On Petition for Review of an Order of the Board of Immigration Appeals
No. A78-690-018 and A73-533-809
Immigration Judge: Hon. R. K. Malloy

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 25, 2006

BEFORE: RENDELL and STAPLETON, Circuit Judges,
and GILES,* District Judge

(Opinion Filed February 28, 2006 )

_____

_____

*Hon. James T. Giles, Chief Judge, United States District Court for the Eastern District of
Pennsylvania, sitting by designation.

OPINION OF THE COURT

STAPLETON, Circuit Judge:

Petitioner Cui Rong Wu[1] ("Wu") petitions for review of a decision of the Board of Immigration Appeals ("BIA") affirming an immigration judge's ("IJ"'s) decision denying her application for asylum, withholding of removal, and protection pursuant to the Convention Against Torture ("CAT").[2]

Wu is a native and citizen of China. She testified that while living in China on May 10, 1999, a neighbor came to Wu's house and informed Wu that family planning officials had come to the neighbor's house to take the neighbor for an abortion procedure. Wu gave permission for the neighbor to hide in Wu's house. Wu later went to the neighbor's home to see if the officials had left. Upon seeing the officials removing furniture from and damaging the neighbor's home, she confronted the officials, saying, "you cannot treat people this way." A.R. at 65. One of the female officials slapped Wu,

---

[1]Petitioner Dao-Yi Xu's claim is derivative of Wu's claim. However, Xu is not eligible for asylum because the IJ determined that Xu filed his asylum application more than one year after his arrival in the United States. We lack jurisdiction to review that determination. 8 U.S.C. § 1158(a)(2)(B).

[2]United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85, implemented in the United States by the Foreign Affairs Reform and Restructuring Act of 1998, Pub.L. No. 105-277, § 2242, 112 Stat. 2681-761 (codified at 8 U.S.C. § 1231).

pushed her aside, and said to her, "you're interfering with family planning policy." *Id.*

Wu testified that two months later, on July 19, 1999, a friend of her father came to her home in order to purchase medications. Wu was living alone in her home at this time. The friend, whom Wu could identify only by his last name, "Moo," stayed overnight. During the night, a family planning official and two police officers arrived at Wu's home to check the household registry. Upon seeing the friend, the police demanded to know his identity, but Wu only knew his last name. The officials accused Wu of prostitution and took both to the police station for interrogation. At the police station, the police told Wu that Moo had confessed to the prostitution. Wu continued to deny being a prostitute.

After the police left her alone, Wu fell asleep on a sofa. Later that night, an officer smelling of alcohol began to touch Wu's body. The officer said to Wu, "oh, young lady you have play with other people you can play with me, then don't pretend you are innocent." *Id.* at 163. After Wu pushed him away and threatened to sue, the officer laughed and said, "you want to start a complaint go ahead, who will believe you, you are a prostitute." *Id.* Despite Wu's protestations and forceful resistance, the officer proceeded to rape and beat Wu.

The following morning, the police continued to interrogate Wu, pressuring her to admit to being a prostitute. They also asked her if she "dared to interfere with the duties of the family planning officials." *Id.* at 68. Wu's uncle later paid Wu's bail, and Wu was released.

3

Wu subsequently attempted to file complaints based on her treatment by the police officer, but when those efforts were unproductive, she fled to the United States.

Wu testified that she has since given birth to one child, desires to have more children, and fears that if she returns to China she would be affected by the one-child policy. At the hearing before the IJ, Wu presented an expert witness whose testimony corroborated Wu's assertion that she had been raped.

The IJ denied Wu's application for asylum, withholding of removal, and CAT protection. The IJ found that Wu had not met her burden of proof to show that she had been persecuted on account of her opposition to China's family planning policies. The IJ was troubled by the failure of Wu's father to testify on Wu's behalf regarding the visit by Mr. Moo. The IJ found it "inexplicable" that Wu "failed to have her father come to Court and corroborate her story and provide more details." *Id.* at 77. Even crediting Wu's testimony, the IJ found that Wu had been arrested not because of her political opinion, but because the police reasonably believed her to be a prostitute. The IJ further found that "[t]here is no evidence that there is any nexus between the rape of [Wu] and her actions of interfering with the family planning officials when they arrived at the home of the neighbor." *Id.* at 79. The IJ concluded that "[t]his official committed a crime against [Wu], plain and simple." *Id.* at 80.

The IJ further found that Wu had not shown a well-founded fear of persecution under China's one-child policy. The IJ noted that it was "purely speculative" that Wu

4

would be persecuted for having a child in the United States. *Id.* at 82. The IJ found "no evidence to establish that she would be persecuted by the government of China because she is returning with one child, and that she would not be permitted to have a second child." *Id.*

The BIA affirmed the IJ's decision in a brief per curiam order. The order states in relevant part:

> Among other things, the Immigration Judge found that [Wu] failed to prove that a police officer raped her on account of a protected ground. Based on the nature of the officer's comments to [Wu] at the time of the deplorable incident, we affirm the Immigration Judge's conclusion. The Immigration Judge further found that [Wu] failed to prove that she has a well-founded fear of future persecution. The respondents have not identified reversible error in that conclusion. In addition, the respondents have also not identified reversible error in the Immigration Judge's denial of withholding of removal and protection pursuant to the Convention Against Torture. Accordingly, the appeal is dismissed.

App. at 1a (citation omitted).

"Our power of review extends only to the decision of the BIA. Therefore, only if the BIA expressly adopts or defers to a finding of the IJ, will we review the decision of the IJ." *Kayembe v. Ashcroft*, 334 F.2d 231, 234 (3d Cir. 2003) (citation omitted). We review the agency's factual findings for substantial evidence and ask whether a reasonable fact finder could make the findings on the basis of the administrative record. *Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir. 2003). We may only overturn the findings if "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

Wu challenges only two aspects of the agency's decision: 1) the IJ's reliance on Wu's failure to corroborate her testimony by having her father testify on her behalf; and 2) the finding of a lack of nexus between Wu's arrest and rape and her earlier statements in opposition to China's family planning policies. However, we lack authority to review the corroboration issue because the BIA did not rely on a lack of corroboration in its ruling. We review the BIA's opinion, not the IJ's, unless the BIA "expressly adopts or defers to a finding of the IJ." *Kayembe*, 334 F.3d at 234. The BIA made no reference, implied or implicit, to the IJ's statements regarding corroboration.

The BIA upheld the nexus finding in light of the "nature of the officer's comments to [Wu] at the time of the deplorable incident." App. at 1a. The BIA was apparently referring to Wu's testimony that the officer said to her, "oh, young lady you have play with other people you can play with me, then don't pretend you are innocent," A.R. at 163, and later, "you want to start a complaint go ahead, who will believe you, you are a prostitute." *Id.* Wu's testimony regarding those statements amounts to substantial evidence supporting the BIA's conclusion that Wu was arrested and raped on account of the police officers' belief that she was a prostitute, and not on account of her opinion of China's family planning policies. We therefore must uphold the BIA's determination that Wu was not persecuted on account of her political opinion.

The petition for review will be denied.

6